Macon and Augusta Railroad Company *vs.* Vason *et al.*

THE MACON AND AUGUSTA RAILROAD COMPANY, plaintiff in error, *vs.* WILLIAM J. VASON *et al.*, executors, defendants in error.

1. The books of the company, including the stock-ledger, are admissible in a suit between the company and a stockholder.

2. Settlements between the company and stockholders to whom the company is indebted, may be made by the directors, nothing wrong or fraudulent appearing, they being but a mere adjustment of cross-demands.

3. Allowing stockholders, during the war, to pay up their entire stock subscribed in the then depreciated Confederate currency, before regular calls were made, is illegal on the part of the directors, but the act of the directors, being *ultra vires,* will not discharge other stockholders from paying for their stock on proper calls made, because such act is a mere nullity and will not prevent the company from still collecting from those who paid in such currency the real amount due by them.

4. On a proper case made, with proper parties, by bill in equity, we will not say that a stockholder sued for his subscription may not compel an equitable adjustment between himself and the other stockholders, by which all the stockholders shall be made to pay equally for their respective shares of stock; but the fact that others were allowed to pay in the depreciated currency their entire stock, will not absolutely discharge him, especially when the same privilege was accorded to him, and he was urged to avail himself of it.

5. The number and qualification of directors fixed by the charter are essential to be adhered to, in order to make calls valid; but if payments were made by any stockholder on calls issued by such or similar directors, such payments will be construed to show acquiescence in their conduct and authority, past and future, and the stockholder so acquiescing cannot afterwards object.

6. When the charter expressly requires notice to be given in certain newspapers, and for a certain number of days, before the calls for installments shall be valid, the company must show a compliance with such condition precedent before a recovery can be had on such calls.

7. A forfeiture of stock is a satisfaction of the debt, and when the right to forfeit has been exercised, no action to recover the subscription for the stock so forfeited can be maintained; but a mere threat, made in the call, to forfeit if not paid—that is, that the stock will be forfeited at a future day if payment be not then made—will not bar the action to recover the subscription, especially if it appear that there was no actual forfeiture.

Corporations. Stock. Evidence. *Ultra vires.* Before Judge GIBSON. Richmond Superior Court. April Term, 1875.

Macon and Augusta Railroad Company *vs.* Vason *et al.*

Reported in the opinion.

HOOK & WEBB, for plaintiff in error.

BARNES & CUMMING; McCAY & TRIPPE, for defendants.

JACKSON, Judge.

This was a suit brought by the railroad company, against the executors of Turner Clanton, for $6,500 00 of a subscription of $10,000 00 to stock, remaining unpaid by Clanton in his lifetime. The jury found a verdict for the sum sued for, with interest from the date of the last call. The executors moved for a new trial on various grounds set forth in the motion, and the presiding judge granted it on one of the grounds alone, and the company excepted. The question for us is, ought the new trial to have been granted on any ground or for any reason? The judgment of the court below is the grant of the new trial, and if the judge granted it rightfully for any reason which appears of record, it is a rightful judgment and should be affirmed, though he may have put it upon a wrong ground or may have given a wrong reason for it. And so this court has uniformly held: 46 *Georgia Reports,* 303, and other cases. There are many grounds set out in the motion, but when analyzed, we think they may be reduced to five.

1. First, it was objected that a book called the stock-ledger, was admitted in evidence. As it had been shown by a receipt signed by Clanton himself, that he was a stockholder, we think that this book should have been admitted. The books of a railroad company are admissible against the corporators, the fact that they are corporators having been otherwise established: Angell & Ames on Cor., 679, 681; 11 *Georgia Reports,* 459; 19 *Ibid.,* 337; 20 *Ibid.,* 279.

2, 3, 4. The second ground is that the company, through its directors, had settled with other corporators at a less sum than the amount they had subscribed, and had permitted

others to pay the whole of their stock, without call, in depreciated Confederate currency during the war; and this is the ground upon which the court below granted the new trial. It seems, from the evidence, that the settlements other than those in Confederate money, were where there were cross-demands, and there is nothing going to show that such settlements were fraudulent or erroneous. Some latitude must be allowed directors in thus acting, especially when it is not made to appear that any stockholder was thereby hurt. The company would have had to pay the stockholder his demand, and to have sued him for its demand, and why not save expenses of law suits and settle fairly? But it does also appear, that subscribers to stock were permitted to settle in Confederate currency, when it was much depreciated, the *whole amount* they had subscribed, not installments merely called for during the war, but the entire stock they had subscribed. It was replied that the same privilege was extended to Clanton and he could have done the same, but that he declined. We think that he was not bound to pay except upon regular call, and that though he had this offer, he was not precluded from objecting to its illegality. Was it illegal?

We see no authority in the charter whereby the directors were empowered so to act. It seems to have been done *ultra vires*, beyond the authority conferred, and the only trouble in the defense here seems to be, that no stockholder was released from the payment of legally called for installments by this illegal action of the board of directors, and that such installments can be still collected from them in good money, or at least, that they can be made to contribute upon a proper case made, equally with this defendant; that is, they can be made in equity to make their bad money good, by paying the difference. The testimony, however, goes further, and shows that all the Confederate money thus taken was paid out dollar for dollar. If this payment, dollar for dollar, was upon contracts made at gold rates, then no harm was done, and there would be no loss; but if for work at prices corresponding with the depreciated currency, it is clear that all other stock-

Macon and Augusta Railroad Company *vs.* Vason *et al.*

holders were hurt, and upon this point the record is silent. But the plea here is, the naked one that the defendant was released by the fact that such money was so taken by the directors, and upon this naked plea, the act of the directors being *ultra vires*, is a mere nullity; nobody was thereby relieved from future payment at the instance of anybody hurt, and the defendant is not thereby released from the payment of his stock. Upon his going into equity, and making the stockholders parties, and showing damage to himself, and praying that all be made to pay as much real money for their stock as he will have to pay for his, we will not say that he may not have relief, if this depreciated currency did not go as far as good money would have done to pay contracts and debts of the company : Angell & Ames, 297, *et seq.*

5. Another ground for the new trial is, that the calls were not legally made. First, that more persons were directors than the charter authorized, and some of them were not stockholders, which the charter required; and, secondly, that notice of the calls was not given according to the charter. The proof is quite clear that a larger number of directors acted than the charter authorized, and that some were not stockholders, but represented Baldwin county, the city of Macon, and other corporations who owned stock, but had paid it in bonds. The charter is part of the contract of the stockholders; but independently of this general principle, in this case, the receipt of Clanton, offered in evidence by the company, shows that he contracted to pay installments or calls " according to the provisions of the charter and by-laws of said company." We should think that this defect would be fatal to the right of recovery by the company, if the defendant had not acquiesced therein ; but it appears that in 1860 by-laws were enacted by which six were made a quorum of directors, and thus the charter was violated at the very beginning, and as Clanton, by paying in 1861 and 1863, seems to have acquiesced in this violation as to the number of directors, and perhaps, also as to the representation on the board, of the cor-

porations of Macon and Baldwin county, and others. If he did so, he ratified what was done, and cannot now complain.

6. In respect to the notices, it seems from the evidence that none of them were advertised in any newspaper in Milledgeville; at least there is no proof that they were so advertised, in this record. The charter requires that this shall be done before the call shall be valid. Its language is, "first giving notice to the stockholders respectively, sixty-days previous to the time required for the payment of such installment, in all the public gazettes of Milledgeville." This appears to be a condition precedent to the validity of the calls, and we think that it should have been proven. It was said that proof of the advertisement in Augusta was sufficient, and a Louisiana case was cited to show that an advertisement in the place where the subscriber lived would be sufficient; but it does not appear that Clanton lived in Augusta; there is no proof in the record that he did live there, and while it may be the fact, the record does not show it. Besides, a mere note of that case was cited in a digest, and what the words of the charter were we do not know. The notice, too, required here was sixty days, and in one of the calls it was only fifty-nine days before payment : Angell & Ames, 517, and note.

7. The last ground on which the motion for the new trial rested, is that the company elected to forfeit defendant's stock, and having done so, that the company could not recover the payments due thereon. Many authorities were cited in the argument, the sum and substance of which seem to establish the principle that the company cannot both forfeit the stock and sue for the balance due. In this case, the stock has not been forfeited, or, at least, there is no sufficient evidence in this record to show it. It is true that the calls which were not paid proclaim that the stock *will be* forfeited if not paid. The nearest approach to this case is one in 35 Vermont, 536. I think it is where the call is that the stock, in default of payment will be, and *is hereby forfeited;* but the call in the case at bar contains only the announcement that it will be forfeited. Whatever presumption there may be, if any, that the threat

was executed, is rebutted by the fact that the last call invites sub-scribers in arrears to correspond with the secretary, and urges all to pay up past arrearages.   The best evidence of the election to forfeit, is the actual forfeiture; and if the whole case taken together shows that there was no actual forfeiture but merely a threat, we shall rule that the payment for the stock may still be enforced.   It would be very wrong to enforce payment for what has been forfeited, taken away; but if the stock is still recognized as the property of the subscriber, he ought to pay for what he got and holds, at the agreed price; and we put this case there, just where we think, authority and principle both rest it : Angell & Ames, 550, and numer-ous cases there cited.

In view of the whole of the facts and the law arising there-on, we will not control the discretion of the presiding judge in granting the new trial.

Judgment affirmed.