STRATTON MASSACHUSETTS GOLD MINES COMPANY *vs.* LARKIN L. DAVIS & others.

Suffolk.     November 4, 5, 1915. — February 9, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Corporation, De facto* directors. *Abatement. Rules of Court.*

Persons assuming to act as the directors of a corporation, who represent a minority of the stockholders and never legally were elected directors, although they might be treated as *de facto* directors in transactions with third persons, have no authority to authorize counsel to bring a suit in the name of the corporation, which is without business or assets, in a factional controversy between rival boards of directors, mainly for the purpose of affecting the property rights of the majority of the stockholders or of imposing a liability upon them; and in such a suit a plea in abatement alleging that the suit was brought in the name of the corporation without authority will be sustained.

Rule 3 of the Superior Court, providing that the declaration of an attorney that he has been authorized to appear for any party, when his authority is demanded, shall be evidence of such authority, does not prevent the proof of an allegation made in a plea in abatement that the suit in which the plea was filed was brought in the name of the plaintiff without authority to do so.

DE COURCY, J. This action of tort is brought in the name of a Colorado corporation to recover damages for alleged wrongful acts, hereinafter stated. In at least three of the six counts the defendants are described as *de facto* directors or officers. At the date of the writ all but one of the original twenty-four were in fact

---

stockholders, and that one had been counsel for the plaintiff in the earlier action against Nathaniel A. Stratton. Answers in abatement were duly filed by most of the defendants, setting up (among other matters) that "this action is brought without the authority, direction or consent of the plaintiff company, and that William Odlin, Esq., who assumes to appear and act as attorney for the plaintiff company in bringing this action, has no right or authority so to do." After a lengthy hearing in the Superior Court, on the pleadings, agreed facts and oral testimony, the answers in abatement were sustained.*

Before discussing the questions of law raised by the exceptions it is necessary to set out certain material facts. The certificate of incorporation of the plaintiff company, dated January 2, 1905, named eight directors, referred to as the "Stratton Board." Nathaniel A. Stratton was president, and five of the remaining seven were the present defendants Larkin L. Davis, Charles L. Sprague, Milo M. Comstock, Alfred Stickney and Frank A. Newman. At the stockholders' meeting on January 2, 1906, the so called "Sprague Board" of directors were elected, although there is an unexplained statement in the bill of exceptions that the legality of their election is contested. The defendants George D. Wheeler, Henry R. Johnson, Josiah H. Brown, Charles E. Tingley and said Davis, Sprague, Comstock and Newman constituted this board. Under their authority a bill in equity was brought, on April 10, 1906, in the name of the plaintiff corporation, against Nathaniel A. Stratton, the former president, to obtain the cancellation of an issue to him of its entire capital stock. In that suit Charles R. Darling, one of the present defendants, was counsel for the plaintiff, and William Odlin was counsel for Stratton. The decree for the defendant was affirmed in May, 1910. See *Stratton Massachusetts Gold Mines Co.* v. *Stratton*, 206 Mass. 117. Meanwhile the defendant Charles L. Sprague brought an action of contract against the corporation in Colorado, obtained a judgment by default, and bid in all the property of the company at the execution sale. Later two stockholders, John W. Scott and Jacob Hauck, purporting to act under the Colorado statutes, issued a call for a stockholders' meeting, to be held at Buena Vista,

---

* By *King*, J., and the plaintiff alleged exceptions.

Colorado, on July 8, 1907. At that time and place H. W. Havens and one M. B. Carpenter assumed to hold the meeting and to elect the so called "Odlin" or "Scott Board" of directors, consisting of William Odlin, John W. Scott and six others. Under their authority the present action was instituted. At the trial in the Superior Court it was ruled that no quorum was present, as the necessary majority of the stock was not represented, and that "the directors assumed to have been elected were not legally elected but that they were *de facto* directors." To this ruling no exception was taken by the plaintiff. Hereinafter these are, referred to as the *de facto* board of directors.

Since the meeting of July 8, 1907, above mentioned, so far as the record discloses no business has been carried on by or in the name of the corporation, unless we consider as such the litigation among the members. As already stated, all of its property had been bid in by Charles L. Sprague at the execution sale on his Colorado judgment, apparently in the autumn of 1906. This execution sale was set aside later. Subsequently, while the present suit was pending, Mr. Odlin brought an action in Colorado against the company for his services, obtained judgment in the sum of $17,500, and bought in all the property at the execution sale. His circular letter of September 25, 1912, offering the property to the stockholders for $25,000 seems to have elicited no response. A bill in equity brought against Mr. Odlin by several stockholders, to set aside this judgment, was dismissed.

The only activities of the *de facto* board before the bringing of this suit apparently were the holding of two meetings. At that of July 22, 1907, John W. Scott was elected president, and William Odlin general manager; and votes were passed to authorize legal proceedings, — especially to set aside the Sprague judgment in Colorado. At the meeting of June 1, 1910, it was voted to authorize a suit in the name of the company for injury done to it by the bringing of the action against Stratton, already referred to, and to authorize also a suit against Charles L. Sprague for an accounting of his transactions while "unlawfully" acting as an officer of the company.

Turning now to the declaration in the present action: The first count is for the alleged unlawful bringing of the suit against Stratton; the second sounds in conspiracy and is based on the

alleged malicious suit of Charles L. Sprague in Colorado; the third is for alleged negligence of the defendants while "unlawfully but in fact the directors," in failing to do the development work required by the mining laws of the United States; the fourth is for breach of contract by the defendants, "being then in fact the directors," in failing to carry out a contract dated November 7, 1905, whereby Stratton was to turn over twenty thousand shares of his stock, to be sold by the company for their and his benefit; the fifth count is for unlawfully paying out of the treasury of the company "a large sum of money, to wit, $5,000;" and the sixth count charges the defendants with acting "unlawfully as *de facto* officers," conspiring to wreck the company in violation of their duty as such officers, and with taking all its property for themselves, without compensation.

In view of the trial judge's finding for the defendants on the answer in abatement, the controlling question in the case is whether the *de facto* board of directors were authorized as matter of law to institute and maintain this action. For the purpose of the discussion we assume in the plaintiff's favor that this broad question is open to it under its exceptions to the action of the judge, in giving the tenth, eleventh and twelfth rulings * requested by the defendants. And first we shall consider the question of the original authority to institute the action, leaving for later discussion the question of subsequent ratification by the corporation.

---

* These rulings, which were made by the judge, were as follows:

"10. That the vote said to have been adopted at the alleged meeting of directors of the plaintiff corporation, at a meeting said to have been held on July 22, 1907, as appears from the answers of William Odlin, Esq., to interrogatories filed in this action, did not authorize William Odlin to institute or maintain the action now in hearing.

"11. That the vote said to have been adopted by the alleged board of directors of the plaintiff corporation on June 1, 1910, as appears from the answers of William Odlin, Esq., to interrogatories filed in this action, did not authorize or empower William Odlin, Esq., to institute or maintain the action now in hearing.

"12. That no authority of any kind to institute or maintain the action now in hearing other than the votes alleged to have been passed at the alleged meetings of directors held on July 22, 1907, and June 1, 1910, respectively appears."

The general proposition is not questioned, that the acts of *de facto* directors of a private corporation are valid as to third persons. Where persons having color of title are permitted by the corporation to act in the position and with the reputation of being directors, third persons who deal with them in ignorance of their want of legal right to the offices are entitled to assume that there is no defect in their appointment. *Merchants' National Bank of Gardiner* v. *Citizens' Gas Light Co. of Quincy*, 159 Mass. 505. *Mining Co.* v. *Anglo-Californian Bank,* 104 U. S. 192. *Brinkerhoff* v. *Jersey City*, 35 Vroom, 225. *Baird* v. *Bank of Washington*, 11 Serg. & R. 411. Ann. Cas. 1913 C note page 1042. Nor can such third person collaterally show the illegality of the election of the *de facto* officers, where no other persons are claiming a right to act as directors, and the incumbents are exercising the usual functions of the office. *Charitable Association in Middle Granville* v. *Baldwin*, 1 Met. 359. See *Clark* v. *Easton*, 146 Mass. 43; 7 R. C. L. § 424, and cases cited.

The reason of this rule is stated by Butler, C. J., in the leading case of *State* v. *Carroll*, 38 Conn. 449, 467, as follows: "The *de facto* doctrine was introduced into the law as a matter of policy and necessity, to protect the interests of the public and individuals, where those interests were involved in the official acts of persons exercising the duties of an office, without being lawful officers. It was seen . . . that the public could not reasonably be compelled to inquire into the title of an officer, nor be compelled to show a title, and these became settled principles in the law. But to protect those who dealt with such officers when apparent incumbents of offices under such apparent circumstances of reputation or color as would lead men to suppose they were legal officers, the law validated their acts as to the public and third persons, on the ground that, as to them, although not officers *de jure*, they were officers in fact, whose acts public policy required should be considered valid."

This *de facto* doctrine, however, ought not to be extended where the reason of the rule does not exist. As between the corporation and third persons, corporate acts which are unlawful or irregular well may be legalized for some purposes on the ground of public policy or practical necessity. But as between the corporation and its stockholders, in matters pertaining to the internal manage-

ment of the company, and where all the parties interested know that the persons pretending to be officers are not officers *de jure*, the reason for validating their unlawful acts fails, and oftentimes the law no longer protects them. This is illustrated by the decisions of the courts of many jurisdictions, that a call made by *de facto* directors is not enforceable against the shareholders, and *a fortiori*, that a declaration by them of a forfeiture of shares is invalid. *Garden Gully United Quartz Mining Co.* v. *McLister*, 1 App. Cas. 39. *People's Mutual Ins. Co.* v. *Westcott*, 14 Gray, 440. *Moses* v. *Tompkins*, 84 Ala. 613. *Macon & Augusta Railroad* v. *Vason*, 57 Ga. 314. *Shellenberger* v. *Patterson*, 168 Penn. St. 30. *Schwab* v. *Frisco Mining & Milling Co.* 21 Utah, 258. 2 Machen on Corporations, § 1478. See *Richards* v. *Attleborough National Bank*, 148 Mass. 187.

Without undertaking to lay down a general rule on this subject, with its varied applications and conflicting decisions, it is enough to say that in our opinion the *de facto* doctrine does not apply in favor of those assuming to represent the corporation in the case at bar. It is apparent from the record that the present action is in substance a factional controversy between rival boards of directors, where a minority of the stockholders, mainly for the purpose of affecting the property rights of, or imposing a liability upon, the majority, are attempting to appropriate the name and rights of a corporation which is without assets or business. Nor is this a case where the healing principle applies that officers acting publicly as directors of a corporation are presumed to have been legally elected; or where the defendants are estopped to assert the lack of authority of those who instituted the action in the name of the corporation. We are of opinion that on the facts the judge was warranted in finding for the defendants on the answer in abatement, and in giving the tenth and eleventh rulings requested by them. *People's Mutual Ins. Co.* v. *Westcott, ubi supra.* *Ellsworth Woolen Manuf. Co.* v. *Faunce*, 79 Maine, 440. *Mechanics National Bank of Newark* v. *Burnet Manuf. Co.* 5 Stew. 236, 238. *State* v. *Curtis*, 9 Nev. 325, 339.

The contention of the plaintiff that the corporation has ratified the action of the *de facto* directors in instituting or maintaining the action is presumably made under its exceptions to the action of the judge in giving the twelfth ruling requested by the

defendants, and refusing those of the plaintiff numbered 20, 52, 53 and 54.* This claim of ratification is based upon (1) the settlement with Henry R. Johnson, one of the original defendants; (2) the appearance in the case of Wilford D. Gray, Esquire, as counsel for the plaintiff; and (3) the meeting of May 17, 1913. We shall treat them briefly in that order.

1. At a meeting of the *de facto* directors, held on August 28, 1911, a vote was passed directing a settlement with said Henry R. Johnson, and a discontinuance of the suit as against him, in consideration of $500. Article 10, § 2, of the by-laws of the corporation provides that "Five members of this board shall constitute a quorum." At this meeting only four of the members were present; and one of these was John W. Scott, the presiding officer, the title of whose shares presumably had passed to his trustee in bankruptcy April 16, 1908. Under the by-laws the

---

* These rulings were as follows:

"20. If Wilford D. Gray entered an appearance in this case for the plaintiff and notice of said appearance was received by the defendants and none of the defendants objected to his appearance for the plaintiff as required by Rule No. 3 of the Rules of the Superior Court, then he, as a matter of law, is the duly authorized attorney of the plaintiff having authority to prosecute this case, and the plaintiff, having an attorney of record duly authorized to prosecute this case, is held, as a matter of law, to have ratified the bringing and prosecution of this case, and it is immaterial on the plea in abatement whether or not William Odlin was authorized to bring this case."

On this request the judge ruled as follows: "Refused. Said supposed authorization or ratification, if any, occurred long after the bringing of this suit and after the filing of the pleas in abatement herein, and it has not been pleaded."

"52. Whether or not William Odlin was authorized by the plaintiff corporation to bring this suit, if the plaintiff corporation subsequently ratified the bringing of the suit, the plaintiff should prevail in this plea in abatement.

"53. The appointment of an agent or an attorney to prosecute this suit is a ratification of the bringing of the suit in the name of the plaintiff corporation.

"54. If Wilford D. Gray entered an appearance in this case for the plaintiff and sent notice of said appearance to the defendants and none of the defendants objected to his appearance for the plaintiff, as required by Rules No. 3 of the Rules of the Superior Court, then he, as a matter of law, is the duly authorized attorney for the plaintiff, having authority to prosecute this case."

These rulings all were refused by the judge.

board of directors "shall consist of not less than eight stockholders." Aside from the fundamental difficulty that this is the same *de facto* board which could not authorize the institution of this action, it is plain that a meeting so constituted could not bind the corporation by an attempted ratification of the unauthorized act.

2. Wilford D. Gray, Esquire, entered his appearance for the plaintiff on November 25, 1912, and sent notice thereof to the defendants. Mr. Odlin withdrew his appearance on May 1, 1913. The parties were at issue when the answers in abatement were filed in August, 1910, and their rights are to be determined as of that time, since no change has occurred to affect them. The proposition that the *de facto* board can escape an adjudication as to its authority to prosecute this action in the name of the corporation by merely changing counsel, carries its own refutation. Rule 3 of the Superior Court * does not help the plaintiff.

3. The trial on the issues raised by the answers in abatement began on May 7, 1913; it was suspended until May 19, and then proceeded until its conclusion on May 23. In the interim, namely on May 17, the *de facto* board held a meeting and voted to ratify the bringing of the suit by Mr. Odlin, and all actions done by him in connection therewith. For the reasons already stated the rights of the parties could not be affected by the vote, and it was excluded rightly.

The plaintiff's exceptions relating to evidence have not been argued, and we treat them as waived. In view of the broad interpretation we have given to the votes of July 22, 1907, and June 1, 1910, the alleged oral instructions given by the board to Mr. Odlin call for no separate consideration. And manifestly the board could not delegate to Mr. Odlin, by appointing him general manager, any powers which they themselves did not possess.

Finally our conclusion that there was no error in the finding or rulings of the Superior Court, and that the bringing of this ac-

---

* That rule is as follows: "When the authority of an attorney to appear for any party is demanded, if such attorney declares that he has been duly authorized to appear, by an application made directly to him by such party, or by some person whom he believes to have been authorized to employ him, such declaration shall be evidence of such authority."

tion was not legally authorized or ratified, makes it unnecessary to consider the alleged statutory disability of the plaintiff corporation under Colorado law.

*Exceptions overruled.*

*W. D. Gray,* for the plaintiff.

*A. N. Hunt & C. R. Darling,* (*R. J. Lane* with them,) for the defendant Davis and others.

*F. N. Nay & D. Stoneman,* for the defendants Brown and another, filed a brief.

