[No. B226767. Second Dist., Div. Six. Nov. 14, 2011.]

DE BONI CORPORATION, Plaintiff and Appellant, v.
DEL NORTE WATER COMPANY, Defendant and Respondent.

## COUNSEL

Lowthorp, Richards, McMillan, Miller & Templeman, Patrick T. Loughman and Darin Marx for Plaintiff and Appellant.

Price, Postel & Parma, Craig A. Parton and Timothy E. Metzinger for Defendant and Respondent.

## OPINION

**PERREN, J.**—For over a century, respondent Del Norte Water Company's articles of incorporation and bylaws have specified how water is to be distributed among its shareholders. For three generations, members of the De Boni family have been actively involved as shareholders, officers and directors of Del Norte Water Company and have approved the articles and bylaws their successor in interest, appellant De Boni Corporation, now questions.

Appellant now complains that the articles and bylaws governing the allocation of "irrigation" water as distinguished from "domestic" water in effect give preferential treatment to some shareholders in the event of a water shortage and are prohibited by Corporations Code section 400.[1]

As we shall explain, the determination of the "threshold requirement," the number used to determine pro rata water entitlement, treats all shares of stock in precisely the same manner. The allocation is determined by a ratio of the number of shares to the number of acres owned. The trial court determined that this water allocation system is not discriminatory and does not violate section 400. We affirm.

### Facts and Procedural History

Respondent Del Norte Water Company (Del Norte) was founded in 1910 to provide water for both domestic and irrigation use in the Somis area of

---

[1] All statutory references are to the Corporations Code unless otherwise stated.

Ventura County. Del Norte was formed as a mutual benefit corporation with 2,500 shares of capital stock. Appellant De Boni Corporation (De Boni) is a family business whose predecessors have been shareholders in Del Norte since 1913. The president of De Boni is Ronald De Boni, the grandson of the original owner. De Boni currently owns 199 acres within Del Norte's service area and 111 shares of Del Norte stock.

All of Del Norte's stock was, and remains, owned by landowners within the service area who are engaged in farming. The stock is not appurtenant to the land and is freely transferable by its owner. A buyer is typically another landowner. There is no formal classification of the stock into different series. Entitlement of a landowner to water from Del Norte is based on a formula of acreage and stock ownership as authorized in the articles of incorporation and specified in the bylaws of the company. As demonstrated by the minutes of a special board meeting on October 17, 1916, the primary purpose of Del Norte was to provide domestic water, and entitlement to water for domestic purposes takes preference over water for irrigation purposes. Historically, anyone entitled to water, including De Boni, has been granted as much water as needed to sustain its farming operations.

The stock certificates are generic. The certificate describes itself as being "Capital Stock" "subject to the rules and regulations of the Corporation."

The articles of incorporation state in part: "The purpose[s] for which it is formed are . . . to divide the waters among its stockholders as needed but limited, in the event of shortage, to amounts in proportion to the number of shares of stock held by each, excluding therefrom the shares which are required to qualify each stockholder's property for domestic water service, in accordance with such criteria as may be established from time to time in the bylaws of the corporation . . . ."

Del Norte's bylaws state that stock ownership for domestic water requires a threshold ownership of either one share for every three acres of property owned or one share for every five acres of land owned, the difference being the location of the property as north or south of the grant line. Only after this threshold requirement is satisfied would a shareholder qualify for irrigation water. If necessary, irrigation water would be allocated, in times of shortage, pro rata based on ownership of shares in excess of what is needed to qualify for domestic water.[2]

---

[2] Relevant portions of Del Norte's articles of incorporation, bylaws and rules and regulations are contained in the Appendix attached to this opinion.

De Boni filed a complaint for declaratory relief seeking a reallocation of water rights on the ground that Del Norte's water allocation system violates Corporations Code section 400, subdivisions (a) and (b). The case was heard in a two-day bench trial. The parties stipulated to most of the facts considered by the trial court and to the authenticity and admissibility of nearly all documents admitted into evidence. The trial court's proposed statement of decision found that the water allocation system does not give preferential treatment to any shareholder and is not discriminatory. After considering objections submitted by De Boni, the court entered a final statement of decision, identical to its earlier proposed statement. Judgment was entered accordingly.

On appeal, De Boni asserts, as it did in the trial court, that Del Norte's water allocation system is unlawful because it creates a de facto classification of stock as either "domestic" or "irrigation" not authorized in the articles of incorporation. In De Boni's view, anything which departs from a strict pro rata allowance of water based solely on share ownership is inequitable because, in the event of a water shortage, De Boni will be unfairly disadvantaged.

Del Norte contends that the use of shares of stock to potentially control allocations of water during a shortage has been in the corporate bylaws since incorporation, this system was approved by the corporate directors, and it is not discriminatory: "the use of the water should be pro-rata, according to the number of shares held by the respective stockholders after deducting one share for each [three or] five acres from the aggregate holding of each stockholder for his use of domestic water." In the trial court, Del Norte also contended that the present challenge is barred by laches, waiver, and/or the statute of limitations. The trial court did not address these issues, and the parties did not brief them on appeal.

*Discussion*

1. *Mutual Water Companies*

In California, owners of real property have long formed mutual water companies to secure, allocate, and deliver water to irrigate their lands. (*Miners' Ditch Co. v. Zellerbach* (1869) 37 Cal. 543, 545.) A shareholder's stake in a mutual water company is a property interest. (See, e.g., *Valley View etc. Water Co. v. Browne* (1951) 104 Cal.App.2d 177, 180 [230 P.2d 875] ["The right evidenced by the stock certificates is a right to receive water and is primarily a right in real property."]; *Bent v. Second Extension Water Co.* (1921) 51 Cal.App. 648, 652 [197 P. 657] [stock in water company constitutes a private vested right of the stock owner].) Consumers, having once been supplied by the company, are entitled to a continuation of such supply,

unless the quantum is diminished by a shortage for which the water company is not responsible, or a shortage by reason of the increased demand of added consumers. In such cases, it is the duty of the water company to supply such water as it has, fairly apportioned between its consumers. (*Leavitt v. Lassen Irrigation Co.* (1909) 157 Cal. 82, 93 [106 P. 404]; see also Wat. Code, §§ 350–359 [water companies have discretion to depart from historic allocations if necessary to fairly apportion water during water shortage].)

## 2. *Section 400*

The statute relied on by De Boni, section 400, states in relevant part:

"(a) A corporation may issue one or more classes or series of shares or both, with full, limited or no voting rights and with such other rights, preferences, privileges and restrictions as are stated or authorized in its articles. . . .

"(b) All shares of any one class shall have the same voting, conversion and redemption rights and other rights, preferences, privileges and restrictions, unless the class is divided into series. If a class is divided into series, all the shares of any one series shall have the same voting, conversion and redemption rights and other rights, preferences, privileges and restrictions."

## 3. *Section 400, Subdivision (a), Is Not Applicable*

De Boni asserts that Del Norte's articles of incorporation violate section 400, subdivision (a), because the articles do not state or authorize the rights, preferences, and privileges of the stock. The contention is without merit.

Del Norte was incorporated prior to the enactment of section 400. At the time of Del Norte's incorporation, the required contents of a company's articles of incorporation were set forth in Civil Code former section 290. With respect to the description of shares in the articles, the statute provided in part: "6. The amount of its capital stock, and the number of shares into which it is divided. Corporations formed for profit, pursuant to the provisions of this code, may, by their articles of incorporation, provide for the classification of their capital stock into preferred and common stock. In the event that the articles of incorporation shall provide for such classification the same must contain a statement of the number of shares of stock to which preference is

granted, and the number of shares of stock to which no preference is granted. The articles of incorporation shall also state, in clear and succinct manner, the nature and extent of the preference granted, and except as to the matters and things so stated, no distinction shall exist between said classes of stock or the owners thereof; provided, however, that no preference shall be granted nor shall any distinction be made between the classes of stock either as to voting power or as to the statutory or constitutional liability of the holders thereof to the creditors of the corporation."

Civil Code former section 290 contained permissive, not mandatory, language and nothing in Del Norte's articles of incorporation conflicts with that former statute.

At oral argument, De Boni contended that section 400 was applicable because Del Norte had amended its articles in 1988. De Boni argues that the amendment of the articles subjected it to all requirements of existing law pursuant to section 900. That argument is without merit. Section 102, subdivision (b), adopted at the same time as section 900, states: "The existence of corporations formed or existing on the date of enactment or reenactment of this division shall not be affected by the enactment or reenactment of this division nor by any change in the requirements for the formation of corporations nor by the amendment or repeal of the laws under which they were formed or created."

Similarly, section 2302 states in part: "The provisions of Sections 202, 204 (other than subdivision (a) thereof) and 205[3] of the new law relating to the contents of articles do not apply to corporations existing on the effective date unless and until an amendment of the articles is filed stating that the corporation elects to be governed by all of the provisions of the new law not otherwise applicable to it under this chapter."

The 1988 amendments to Del Norte's articles of incorporation do not contain an election to be governed by provisions of the new law. (See appen.)

4. *Section 400, Subdivision (b), Is Not Applicable and the Domestic Threshold Is Not Discriminatory*

De Boni's principal argument is that using a domestic threshold before a right to irrigation water accrues is discriminatory because it makes some

---

[3] Sections 202 and 204 set forth required and optional provisions of articles of incorporation applicable to corporations formed on and after January 1, 1977, the effective date of the new law. Section 205 concerns the par value of shares.

shares more valuable than others, which is a de facto creation of stock having different rights within the same class of stock and is a violation of section 400, subdivision (b). The argument is without merit because, as discussed above, section 400 is not applicable as it was not in effect when Del Norte incorporated.

■ Stockholders in corporations organized chiefly to acquire and distribute water have a right to the proportionate distribution of such water at the time the stock is acquired and may individually enforce that right. (*Erwin v. Gage Canal Co.* (1964) 226 Cal.App.2d 189, 195 [37 Cal.Rptr. 901]; see also *Consol. Peoples D. Co. v. Foothill D. Co.* (1928) 205 Cal. 54, 64 [269 P. 915] ["The sole right of each and every stockholder in . . . said corporation[] is the right in mutuality with its fellow stockholders of having the proportionate share of each in the distributable waters owned by such corporation . . . ."]; *Richey v. East Redlands Water Co.* (1903) 141 Cal. 221, 228 [74 P. 754] ["in the absence of provision to the contrary in the certificates of stock, or in the resolutions, by-laws, or charter authorizing its issue, or other writing, the stockholders are to be regarded as being equal in right . . . ."].)[4]

■ De Boni fails to acknowledge a significant body of law that characterizes the articles and bylaws of a corporation as being a contract between the corporation's shareholders and the corporation. (See, e.g., *Watson v. Santa Carmelita etc. Co.* (1943) 58 Cal.App.2d 709, 714 [137 P.2d 757], disapproved on other grounds in *Chance v. Superior Court* (1962) 58 Cal.2d 275, 288 [23 Cal.Rptr. 761, 373 P.2d 849] [articles of incorporation become part of the agreement between purchasers of stock in a mutual water company]; *Smith v. Hallwood Irr. Co.* (1924) 67 Cal.App. 777, 783 [228 P. 373] [where stockholder votes to amend articles of incorporation or bylaws he enters into a contract with his fellow stockholders and with the corporation to the effect that his water rights are thereafter subject to the limitations and conditions set forth in the bylaws and articles of incorporation].)

A reallocation of water giving De Boni a greater proportionate share would impair the vested contractual rights of other shareholders in the company to the proportionate share of water represented by the stock they purchased in reliance on the articles and bylaws. (See *Crescent Canal Co. v. Kings Co. D. Co.* (1941) 43 Cal.App.2d 370, 375–376 [110 P.2d 1006] [water company could not dedicate one stockholder's beneficial interest, without his agreement or consent, to the use and benefit of the other stockholders]; see also

---

[4] Del Norte argues that the threshold system it uses is not a pro rata distribution because shareholders have been given water as needed. We disagree. De Boni's challenge is to the allocation system that will be used in the event of a water shortage. That system is proportional in the sense that it treats each shareholder alike by subjecting each landowner to the domestic threshold.

*Bent v. Second Extension Water Co., supra,* 51 Cal.App. at p. 652 ["the law does not place in the hands of any number of his fellow-stockholders the power to take away at their will this property right . . ."].)

The domestic threshold is not discriminatory. Each and every share is subject to the same restriction imposed by the threshold system.[5] Once the threshold requirement is satisfied, use of remaining stock to determine entitlement to irrigation water is likewise neutral on its face. De Boni asserts that if shareholders who own the same number of shares have rights to different amounts of water, then this must mean their shares have different rights. This is incorrect. The threshold system applies uniformly to each share and to each shareholder. The restrictions on water supply are based on the acres owned by the shareholder and on the number of shares owned, not on the type of shares owned. As the shares are not appurtenant to the land, a property owner has sole control over both the number of acres and the number of shares it chooses to own.[6]

## Conclusion

■ Del Norte's articles of incorporation complied with the law in effect at the time of adoption. Since that time, every shareholder in the corporation, regardless of the number of shares owned, has received all the water needed for domestic and agricultural uses. The threshold system is to be used only in the event of a water shortage. Every shareholder is subject to the domestic threshold. No shareholder is given a preference, right or privilege not available to every other shareholder. For any shareholder, entitlement to water is based on acreage. During a water shortage Del Norte has statutory authority and discretion to allocate water in a manner different from the historic water allocation. (Wat. Code, §§ 350–359.) Any reallocation of water rights without the vote of all the shareholders would deprive them of their vested right to water based on the allocation that has been in effect for a century.

---

[5] De Boni does not challenge the disparity in the treatment of shareholders based on whether their property is located north or south of the grant line.

[6] De Boni makes a cursory argument that Del Norte invalidly bases assessments for capital improvements solely on the number of shares without distinguishing domestic from irrigation shares. The record shows that De Boni did not raise this as an issue in its trial brief or mention it in either its opening or closing arguments at trial. The issue is waived. (See, e.g., *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 651 [134 Cal.Rptr.2d 273] [possible theories that are not fully developed or factually presented to the trial court cannot create a triable issue on appeal].) Moreover, De Boni's treatment of the issue in its appellate briefs is limited to a single sentence without citation to authority. (E.g., § 14303 [authorizing water company to levy assessments upon its shares and deliver water as provided in its articles and bylaws].) This, too, constitutes a waiver. (See, e.g., *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 [127 Cal.Rptr.2d 917] [an appellate court need not consider an argument for which no authority is furnished].)

The judgment is affirmed. Respondent shall recover costs on appeal.

Gilbert, P. J., and Coffee, J., concurred.

## APPENDIX

### *Articles of Incorporation, as Amended 1988*

Section 2 of Del Norte's articles of incorporation was amended in 1988 to state: "The purpose[s] for which it is formed are to engage in the business of selling, distributing, supplying, and delivering water for irrigation purposes and for domestic use only to its stockholders (and to non-stockholders only in emergencies, as permitted by law) as a mutual water company and for the exclusive use upon lands owned by them or in their lawful possession situated within the corporation's service area in Ventura County, the exterior boundaries of which shall be described in the corporation's bylaws ('the company's service area'); to charge for such services only such sums as will be sufficient to maintain, operate, and extend its water system and no dividends of any kind or character shall ever be paid; to divide the waters among its stockholders as needed but limited, in the event of shortage, to amounts in proportion to the number of shares of stock held by each, excluding therefrom the shares which are required to qualify each stockholder's property for domestic water service, in accordance with such criteria as may be established from time to time in the bylaws of the corporation; to buy, sell, and dispose of real and personal property, to contract debts and borrow money and to secure the payment thereof by mortgage or Deed of Trust of the property of the corporation; to acquire, purchase, have and hold such real and personal property, water, water bearing lands, water rights, rights of way, reservoirs, pumping plants, water works, pipe lines, conduits and other property as may be necessary or convenient to the conduct of its business; to build, construct, maintain, and operate reservoirs, pipe lines, conduits, pumping plants and any and all other necessary or convenient things proper or incidental to the carrying on of its business."

### *Bylaws*

Del Norte's bylaws state in part: "Article XVII . . . Section 3. <u>Quantities</u>. The company shall deliver water only to its stockholders . . . in accordance with its articles of incorporation and these bylaws, as amended. The company is not required to furnish to any stockholder any definite or fixed quantity of water. The company reserves the right to regulate the delivery of water according to supplies available to it. So long as the supply of water and the demand thereof permits, the company may furnish water to any shareholder in excess of his or her proportionate share, provided it does not prejudice the right of other shareholders to receive their proportionate share of water. . . . [¶] . . . [¶]

"Section 5. <u>Domestic Water</u>. Before a stockholder is eligible to receive irrigation water, such stockholder shall be required to satisfy the following minimum stock ownership threshold for domestic water ('domestic threshold'):

"a) To be eligible to obtain water for domestic use only for property within the Company's service area situated North of the Ranch[o] Santa Clara Del Norte grant line, a shareholder is required to have one share of stock for each five acres of property owned by such shareholder within the Company's service area.

"b) To be eligible to obtain water for domestic use only for property within the Company's service area situated South of the Rancho Santa Clara Del Norte grant line, a shareholder is required to have one share of stock for each three acres of property owned by such shareholder within the Company's service area. [¶] . . . [¶]

"Section 6. <u>Irrigation Water</u>. To be eligible to obtain irrigation water for use on any property within the Company's service area, either North or South of the Rancho Santa Clara Del Norte grant line, the shareholder is required to allocate one share to each three acres he owns within the Company's service area, as domestic shares. Any stock held by the shareholder in excess of one share per three acres will be treated as 'irrigation water stock' entitling the shareholder to irrigation water.

" 'Irrigation water stock' shall entitle the holder thereof to such proportion of the supply of irrigation water as the number of shares of such irrigation stock owned by such stockholder bears to the outstanding capital stock of the corporation after deducting the domestic water stock (as computed in this Paragraph 6) therefrom. A stockholder who qualifies for irrigation water may be supplied any additional amount he or she desires if the rights of other stockholders to water are not thereby interfered with.

"In view of the differing quality standards between irrigation and domestic water, shareholders shall not use irrigation water for any domestic purpose whatsoever at any time. . . .

"Section 7. <u>Non-Pro Rata Allocation</u>. A Stockholder who fails to satisfy the domestic threshold requirement shall not be permitted to satisfy such domestic threshold as to any portion of his or her land by means of non-pro rata allocation or designation of the shares relative to the land owned by such stockholder.

"Section 8. <u>Domestic Only Allocation</u>. Notwithstanding anything herein to the contrary, the board of directors may, in its sole and absolute discretion,

permit a stockholder to allocate or designate shares to a portion of his or her land within the company's service area, for the limited purpose of qualifying his or her property for domestic water only.

"As a condition [for] approving such allocation or designation, the board of directors may, in its sole and absolute discretion, require such stockholder to waive and renounce the right to receive either domestic or irrigation water on the balance of his or her property situated within the company's service area ('withdrawn property'). Nothing herein shall preclude such stockholder's withdrawn property from later qualifying to receive irrigation water if the stockholder acquires the necessary shares to satisfy the domestic threshold requirement with respect to the withdrawn property."

*Rules and Regulations Readopted October 2004*

Emergency Water Service

"(1) Irrigation water may be supplied to a non-shareholder or a shareholder otherwise ineligible to be served, on request to the Manager, providing that the Company's system has sufficient capacity and no shareholder is otherwise injured. No emergency water shall be supplied for a period exceeding six (6) weeks without approval of the Board of Directors. . . .

"(2) Domestic water shall not be supplied on an emergency basis except on approval of the Board of Directors. . . ."