POTTER et al. v. VERNON et al.

No. 16756. Opinion Filed Feb. 21, 1928.

(Syllabus.)

**Indians—Validity of Mortgage on Inherited Lands by Full-Blood Creek Approved by County Court.**

A mortgage executed by a full-blood Creek Indian covering her interest in inherited lands under the provisions of section 9 of the Act of Congress of May 27, 1908, when

approved by the county court having juris diction of the settlement of the estate of the deceased allottee, is valid and binding and may be foreclosed.

Commissioners' Opinion, Division No. 1.

Error from District Court, Wagoner County; O. H. Searcy, Judge.

Action by W. S. Vernon and C. W. Walcott against Melissa Potter, nee Bird, et al. Judgment for plaintiffs foreclosing mortgage, and defendants appeal. Affirmed.

P. E. Reed and John C. Graves, for plaintiffs in error.

E. L. Kirby and T. M. Markley (P. L. Newton and J. C. Pinson, of counsel), for defendants in error.

BENNETT, C. W. S. Vernon and C. W. Walcott brought suit in the district court of Wagoner county against Melissa Potter, nee Bird, Clarence Potter, and Richard Cox, to recover upon a promissory note made to P. L. Newton for the sum of $1,250, and to foreclose a real estate mortgage securing the same, which note and mortgage were subsequently assigned to plaintiffs. The petition is in regular form, and shows, as exhibits, copies of the note and mortgage sued on. The allegation is made that the conditions of the note and mortgage were breached by failure to pay the same at maturity. The allegation with regard to Richard Cox is that he claims some interest, and he is therefore made a party to have his interest adjudicated and declared to be inferior to that of plaintiffs in the property. This mortgage is regularly approved by the judge of the county court for Wagoner county, wherein the real estate lies.

Defendant Melissa Potter filed an answer and cross-petition. The first paragraph admits the execution of the note and mortgage, but alleges that the same was wholly without consideration, and that plaintiffs purchased said notes and mortgage with full knowledge of such fact. For a second defense it is alleged that Melissa is a full-blood Creek Indian, duly enrolled as such; that her father, Lewis Bird, was a full-blood Creek Indian, and that the lands in question were part of his allotment; that he died intestate in April, 1901, the owner of the land described in plaintiffs' petition; that Melissa inherited an undivided two-thirds interest in the said lands described in plaintiffs' petition from her ancestor, Lewis Bird, deceased; that on or about the 1st of November, 1918, Clarence Potter, the husband of Melissa, became involved in an affray and sought counsel of P. L. Newton,

attorney, payee of the note and mortgage sued upon, and that said Newton advised defendant's husband and herself that her husband, Clarence Potter, was in imminent danger of being convicted of a serious crime; that her husband is a white boy, illiterate, can neither read nor write the English language, and that she is an ignorant Indian girl, and that said Newton persuaded and coerced defendant into executing and delivering to him the note and mortgage sued upon in this action, and that the same were taken without having the same approved by the county judge of Wagoner county, and that plaintiffs, with full knowledge of the transaction, took an assignment thereof. Melissa further alleges that by virtue of the Act of Congress of May 27, 1908, the mortgaging of said inheritance was prohibited, and she therefore alleges that the same is void and of no effect. For a third and further answer and cross-petition, Melissa quotes the terms of the Act of Congress of May 27, 1908, and avers that it prohibits a full-blood Creek Indian from making a mortgage of the lands inherited from her full-blood ancestor.

The plaintiffs, for their reply, deny all the allegations in the answer contained, and specifically deny any knowledge of misrepresentation or lack of consideration on the part of their assignor, P. L. Newton, who assigned to them the note and mortgage sued upon, and allege that they are the holders of the note and mortgage in due course, and are innocent purchasers for value, and acquired said note and mortgage prior to maturity. They further admit that Melissa Potter, nee Bird, is a full-blood Creek Indian and inherited certain interests in the lands described in plaintiffs' petition from Lewis Bird, her father. They allege that she inherited one-third interest in said land from her father, Lewis Bird, and also a certain interest in said land from Walter Bird, deceased, also a full-blood Creek Indian, and also that Melissa purchased a two-ninths interest in said land from Amy Tiger and Rider Chenewee on August 29, 1914, by an instrument of conveyance duly approved by the county judge of Wagoner county on August 31st thereafter, and that such two-ninths interest became then unrestricted and free from limitations or restrictions, by reason of all of which Melissa Potter became the owner of a full two-thirds interest in said premises, and that four-ninths interest in said land was restricted and two-ninths interest in said land was unrestricted, and that these were the lands conveyed by mortgage to P. L. Newton, and

that the same was properly approved by the county court of Wagoner county, Okla., the court having jurisdiction of the settlement of the estate of said Lewis Bird, deceased.

Clarence Potter files his separate answer, and, after denying generally the allegations of plaintiffs' petition, admits the execution of the note and mortgage sued upon, and admits the negotiation and transfer of the same by Newton to the plaintiffs, but denies that the same was transferred in good faith or for valuable consideration; and he further alleges that the consideration for said note and mortgage was for legal services to be rendered by P. L. Newton, an attorney at law, in defense of said Clarence Potter in a suit then pending in the district court of Wagoner county, Okla.; that the amount of the fee to be paid said Newton was $500. It was then and there agreed that Melissa Potter, the wife of Clarence, should join with this defendant in the execution of said note and mortgage, and that instead of making the same for $500, the amount of the fee, it was agreed that it should be made for $1,250; the excess over the fee aforesaid was to be paid in cash to the mortgagors.

Answering further, it is alleged that Newton failed and refused to pay over to defendants Clarence or Melissa the $750 excess as agreed upon; that the said Newton failed and refused to perform the services for which he was employed, and by reason whereof the said Clarence Potter was compelled to employ and pay other counsel; and it is further alleged that the plaintiffs are not holders in due course and in good faith of said note and mortgage. For his cross-petition, after re-alleging the facts set out in his answer, he alleges that the fee agreed upon was contingent upon the result to be obtained in the lawsuit, and that since the said Newton failed and refused to render such services, nothing was due him, and he asks that the note and mortgage be canceled, and that the said incumbrance be removed from the title to said lands. A reply by general denial was filed by the plaintiffs. At the opening of the trial, the defendants, through their counsel, in open court, admitted that the plaintiffs are purchasers for value of the note and mortgage; further, it was admitted that the allottee died in Wagoner county, Okla. The deposition of Edward Merrick was read in evidence in behalf of plaintiffs, wherein he testified that he was supervisor of allotments of restricted Creek Indians, and that his duties are various, consisting partly in passing upon questions of heirship, passing

on titles to land formerly held by restricted Indians, and various similar duties in the administration of the affairs of the Five Civilized Tribes; also, that he was a lawyer admitted to practice in the state of Oklahoma. He testified further, in substance, that practically his entire time was taken up with the consideration of Indian titles and the acts of Congress bearing thereon. He says that he is familiar with the Act of Congress of May 27, 1908, known as the Renewal Act, and being asked specifically with respect to sections 5 and 9 thereof, states that the construction of his department, the office at Muskogee, and through correspondence with the Department at Washington, it has been held and understood to be the proper construction of such act that the execution of a mortgage by a full-blood Indian, when properly approved by the county court, is valid, and that although the Department has taken action to recover various lands illegally disposed of by the Indians, so far as he knows, the Department has taken no hand in any case to recover lands which have been sold under foreclosure of a mortgage, or which have been mortgaged by a full-blood Indian, and that he and his Department have construed a mortgage as a conveyance within the meaning of the Act of Congress hereinbefore referred to. There is introduced in evidence plaintiffs' Exhibits "A" and "B," being the note and mortgage sued on. It is stipulated by counsel that Melissa Potter, nee Bird, is the daughter of Lewis Bird, deceased; that both Lewis Bird and Melissa Bird were enrolled as full-blood Creek Indians, and that Lewis Bird was the allottee of the lands in question, and that Melissa is the owner of an undivided two-thirds interest in, and had possession of the same at the time of the execution of the mortgage in question, and was the sole heir to an undivided two-thirds interest in and to the possession of the same by virtue of her inheritance of said interest in the real estate from her duly enrolled Creek full-blood ancestor, and the Creek Nation Indian roll showing the enrollment of Melissa Bird and Lewis Bird also introduced.

Upon conclusion of the evidence, motion was made by plaintiffs for a directed verdict, which was sustained, and under such direction a verdict for the plaintiffs and against the defendants was returned. Judgment following the verdict and after motion for new trial, the cause is brought here for review.

The motion for new trial sets out four grounds, the petition in error three grounds,

but the entire argument in the brief is directed to one question: Does the Act of May 27, 1908, authorize the county court of the county having jurisdiction of the estate of a full-blood Creek Indian to approve and render valid a mortgage of full-blood inherited land made by a full-blood heir of a full-blood Creek Indian? This is the only matter of substance or seriously discussed in the briefs.

In the case of R. J. Terrell v. Cephus W. Scott, decided by this court September 27, 1927, and reported in 129 Okla. 78, 262 Pac. 1071, this identical question was before this court and Mr. Commissioner Foster, rendering the opinion, decides the question in the affirmative. That opinion is a singularly clear-cut enunciation on the subject, and refers to and is predicated upon the cases of Chupco v. Chapman, 76 Okla. 201, 170 Pac. 259; U. S. v. Gypsy Oil Co., 10 Fed. (2d Ed.) 487; Pluto Oil & Gas Co. v. Miller, 95 Okla. 222, 219 Pac. 303; Landrum v. Graham, 22 Okla. 458, 98 Pac. 432; Harris v. Lynde-Bowman-Darby Co., 29 Okla. 362, 116 Pac. 808; Frame v. Bivens, 189 Fed. 785; Conard v. Atlantic Ins. Co., 7 L. Ed. (U. S.) 189.

We have gone over with care the cases cited, and it occurs to us that these cases either directly, or by analogy support the opinion. Cumulative authorities may be found. State v. Rhodes, 77 Kan. 202, 93 Pac. 610; White v. McGarry, 47 Fed. 420; Hibernia Savings Society v. Farnham, 153 Cal. 578, 96 Pac. 9; Kent v. Williams, 146 Cal. 3; Adams v. Hopkins, 144 Cal. 19, 77 Pac. 712; Seal of Gold Min. Co. v. Slater, 161 Cal. 621, 120 Pac. 15; Stearns Light, etc. Co. v. Central Trust Co., 223 Fed. 962; O'Brien v. Fleckenstein, 180 N. Y. 350.

In the case of U. S. Hooe, 3 Cranch (U. S.) 73, 2 L. Ed. 370, Chief Justice Marshall says:

"The difference is a marked one between a conveyance which purports to be absolute and a conveyance which from its terms is to leave the possession in the vendor. If in the latter case the retaining of possession was evidence of fraud, no mortgage could be valid."

In Conard v. Atlantic Ins. Co., 1 Pet. (U. S.) 386, 7 L. Ed. 189, it is said:

"A mortgage is a conveyance of property and passes it conditionally."

And Story, J., adds:

"A mortgage is * * * a lien for a debt * * * and something more. It is a transfer of the property itself as security for the debt."

13 C. J. p. 901, note 34b:

"In New York alone, the courts, without the aid of a statute, hold a contrary doctrine. In the other states, which hold a mortgage not to be a conveyance, the rule depends upon express statutes, passed long after 1841, when section 2262 was made law by act of Congress."

Under the general rule that all instruments affecting real estate are included under the word "conveyance," are included the following: A mortgage of an equitable interest (Sullivan v. Corn Exchange Bank, 154 App. Div. 292, 139 N. Y. S. 97); a leasehold (Lembeck, etc., Eagle Brewing Co. v. Kelly, 63 N. J. Eq. 401-406, 51 Atl. 794); of personal property (Patterson v. Jones, 89 Ala. 388-390, 8 So. 77); an agreement to execute a mortgage (In re Wight's Mortg. Trust, L. R. 16 Eq. 41-46); an assignment for the benefit of creditors (Prouty v. Clark, 73 Iowa, 55-56, 34 N. W. 614); an assignment of a chose in action (Wilson v. Beadle, 2 Head [Tenn.] 510); the satisfaction of a mortgage (Foss v. Dullam, 111 Minn. 220, 126 N. W. 820); an instrument in the nature of a trust deed, even without a seal, acknowledgment or witness (White v. Fitzgerald, 19 Wis. 480); a release, as an instrument by which the title to real estate might be affected in law or equity (Palmer v. Bates, 22 Minn. 532); a release of a mortgage (Baker v. Thomas, 61 Hun, 17, 15 N. Y. S. 359); or part of land covered by a mortgage (Merchant v. Woods, 27 Minn. 396, 7 N. W. 826).

It is true that, under our statute, a mortgage of real estate is to be regarded as a lien only, but the lands in question are Indian lands, with reference to which the federal government has dealt in a peculiar manner, due to peculiar conditions. Under our Oklahoma laws our citizens have the right to transfer without let or hindrance, all or any part of their real property, but with respect to its wards, the Indians, the government has always dealt exclusively with the transfer of their lands, not only placing restrictions upon the lands themselves, but upon those who owned them. In this case the legality of the transfer is to be determined by interpretation of the Act of Congress, and the meaning of this act is ascertained by discovering, not what was in the minds of the lawmakers of Oklahoma in passing the several statutes with reference to conveyances and transfers, but what was in the mind of Congress when it passed the Act of May 27, 1908, and its use of the word "conveyances" in said act. We must assume that in an act of such sweeping proportions it was intended by Congress to deal

finally and comprehensively with the subject in hand. Section 5 of the act uses very general terms:

"That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or other instrument or method of incumbering real estate, made before or after the approval of this act, which affects the title of the land allotted to allottees of the Five Civilized Tribes * * * shall be absolutely null and void."

Section 9 seems to be just as comprehensive in the following words:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land; provided that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee. * * *"

It appears to us that the words "provided that no conveyance of any interest of any full-blood Indian heir in such land," could hardly be more comprehensive. We think that the words "conveyance of any interest" are just as comprehensive, and perhaps more so, than the word "alienation," and yet a valid mortgage is often the first step in a final alienation of land, and even a foreclosure has reference back to the date of the mortgage and must follow the terms thereof.

To give too limited or restricted a meaning to the word "conveyance," and yet a comprehensive meaning to the word "alienation" in the act, the result would be illogical, for it would require, for the making of a deed by the full-blood Indian heir, an approval of the county court, but for the execution of a mortgage upon his land, which might easily be effective to transfer his title, no such approval was necessary. This could not have been in the mind of Congress. It is not to be supposed that Congress inadvertently or through oversight failed to take into consideration that the Indian might wish to mortgage his land, for the mortgaging of real estate is almost as old as our assurances of title, so that, in our judgment, they either entirely overlooked this contingency, or they meant the words "conveyance of any interest" should include every written instrument which might affect the title. It has been, and properly so, we think, the design of the government, as rapidly as they could with safety, to permit the Indians to deal with and have charge of their property, not only for the benefit of the community, but for the distinct benefit of the Indians, by casting responsibility upon them,

and we interpret and understand this act of Congress as evidencing that disposition of the government.

We are content to rest the decision in this case upon the holding of the court in Terrell v. Scott, above referred to, and by reason whereof we hold that the judgment of the trial court should be in all respects affirmed.

FOSTER, HERR, JEFFREY, and LEACH, Commissioners, concur.

By the Court: It is so ordered.

Note.—See 31 C. J. p. 514, §79.