[Civ. No. 4123.   Third Appellate District.—June 19, 1930.]

W. J. CLARK, Respondent, v. OCEANO BEACH RESORT COMPANY (a Corporation) et al., Appellants.

M. R. Van Wormer for Appellants.

S. V. Wright for Respondent.

FINCH, P. J.—The defendant, Oceano Beach Resort Company, is a corporation with issued capital stock of 36,525 shares, of which the plaintiff owns 7,250 shares. On April 5, 1926, the board of directors of the company levied an assessment of 10 cents a share on the capital stock. The plaintiff, who is one of the directors, did not pay the assessment on his stock, but brought this action to enjoin the sale thereof for nonpayment of the assessment. Judgment was entered in his favor as prayed for and the defendants have appealed on a record prepared in accordance with the provisions of section 953a of the Code of Civil Procedure.

The reporter's transcript contains 475 pages, much of the evidence included therein being immaterial. The respondent has not complied with the requirement of section 953c of the Code of Civil Procedure that "the parties

must . . . print in their briefs, or in a supplement appended thereto, such portions of the record as they desire to call to the attention of the court," nor has he stated therein, in lieu of such printing, "the substance of such record, parenthetically referring to the line and page of the typewritten transcript for verification," as permitted by rule VIII of the Supreme Court and District Courts of Appeal. It does not clearly appear, therefore, upon what part of the evidence the respondent relies in support of the findings and judgment.

In appellants' opening brief it is said: "By the findings fourteen reasons are assigned as making the assessment null and void." Respondent admits that some of these assigned reasons are groundless and several others are manifestly without sufficient merit to warrant a discussion thereof.

At the directors' meeting of April 5, 1926, Elmer Ware acted as one of the directors as the successor in office of S. G. Dillashaw. The court found that Ware was not a director at that time, but that Dillashaw was then a director. At a meeting of the board on February 15, 1926, Dillashaw orally resigned his office and thereafter he did not participate or attempt to participate in the meetings of the board. There is a conflict in the evidence as to whether the board formally accepted his resignation at the meeting of February 15, but at a meeting of the board on March 8, 1926, Ware was elected a director to fill the vacancy caused by Dillashaw's resignation. Ware at once entered upon the discharge of his duties as a director and as such participated in the conduct of the business of that meeting and of the subsequent meeting of April 5th. It has been held that "an oral resignation is sufficient" and that "an acceptance is not necessary to render the resignation effective, unless it is tendered to take effect on acceptance." (14a C. J. 73.) In any event, Ware was clearly a *de facto* director and his acts as such were valid. (*San Joaquin L. & W. Co.* v. *Beecher*, 101 Cal. 70, 80 [35 Pac. 249].)

The court found "that a portion of a former assessment . . . remained unpaid" at the time the assessment involved herein was levied. The respondent has not called attention to any evidence supporting this finding and a

careful search of the record fails to disclose any such evidence.

■ The court found "that said assessment was not made, or levied, in good faith to pay the debts or expenses of said corporation or to conduct the business of the corporation, but that the same was made and levied pursuant to an understanding and conspiracy between the defendants J. M. Long, C. H. Marshall, H. S. Dole and Elmer Ware with the intent to oust the other stockholders and to get control of the corporation and its assets for their own personal gain and advantage and to the detriment and injury of such other stockholders," and "that it is not true that the financial condition of said corporation was the sole or only reason for levying the said pretended assessment or that it was the reason for levying the same." There is no evidence of a conspiracy between the directors named in the finding. At most the evidence raises a suspicion that one of the motives of the defendant Long was to gain control of the corporation. The evidence shows that at the time the assessment was levied the corporation had on hand only $12.09 and was in debt over $13,000, including an indebtedness to the plaintiff of $2,500. It appears that it had a few town lots which could have been sold and that it had a permit to sell additional shares of stock to its own stockholders, the amount which could have been realized from both sources, however, being insufficient to pay the indebtedness. Whether an assessment shall be levied or the property of a corporation shall be sold to raise funds with which to meet its obligations is a question for the determination of the corporation and its officers and not for the courts. "It will be presumed that assessments were made in good faith and for a proper purpose. And if the purpose is a proper one the motive of the directors in levying it is immaterial." (Fletcher's Cyclopedia of Corporations, sec. 4273.)

■ The only serious question to be determined is whether the meeting of April 5th was held at a proper place. The articles of incorporation provide: "That the place where the principal business of the corporation is to be transacted is in Oceano, County of San Luis Obispo." The by-laws are silent as to the location of the office or place of business of the corporation.

The corporation was organized about January 1, 1921. Prior to August 1, 1925, the meetings of the board of directors were held in Bakersfield, Kern County. The corporation owned a pavilion in Oceano in which there was "an office specially prepared for meetings of the corporation and the keeping of the records of the secretary." The board of directors held meetings in the pavilion on the following days: August 14, 1925; February 5, February 15 and March 8, 1926, and a stockholders' meeting for the election of directors was held there February 15, 1926. The plaintiff attended the meeting of March 8th and participated therein. The minutes of that meeting contain the following: "The meeting adjourned to meet on April 5, 10 a. m., 1926." Thereafter notices, signed by the president and secretary, were sent to the plaintiff and the other directors, stating:

"You are hereby notified by the president that the next meeting of the board of directors of the Oceano Beach Resort Co. Inc., will be held at the company's office, corner of Fifth and Beach streets, Oceano, . . . on the 5th day of April, 1926, at 10 a. m., for the purpose of acting on and transacting and disposing of any business that comes before said board of directors."

The place designated as "the company's office, corner of Fifth and Beach streets," was the secretary's residence. On April 2d the plaintiff sent letters to the other directors, stating:

"This will notify you that any official meeting of the Oceano Beach Resort Company held in any other place except the official office of the Oceano Beach Resort Company at the pavilion will be illegal until the proper procedure has been taken to change the office."

The plaintiff was in charge of the pavilion and it appears that he resided therein with his family. On April 5th, prior to the time set for the meeting, he left Oceano and remained away therefrom until after the final adjournment of the meeting. The other directors met at the pavilion at 10 o'clock A. M. on that day and, finding the doors locked, they held a meeting on the sidewalk adjacent to the building and adopted the following resolution:

"Be it resolved, that the board of directors ratify and confirm the permanent location of the Oceano Beach Resort Company's office at Fifth and Beach streets as published in the Arroyo Grande paper."

The board then "adjourned to meet at the office of the company at 10:45 a. m., April 5, 1926." All the directors except the plaintiff met at the time and place last mentioned and adopted a resolution levying the assessment in dispute. No question is raised as to the sufficiency in form of the proceedings at this meeting.

As throwing light upon the acts and conduct of the parties, it may be stated that the plaintiff and his wife were in possession of the pavilion under a lease from the defendant corporation and that controversies had arisen between the parties in connection therewith. At the second meeting of April 5th the following resolution was adopted:

"Be it resolved: That the president be and he hereby is authorized and empowered to do all things necessary to recover the possession of the pavilion and premises surrounding the same now held by Margaret C. Clark and or W. J. Clark under a purported lease dated August 1, 1925."

The by-laws make no provision for the time or place of meetings of the board of directors or for any regular meetings thereof, and all the meetings of the directors were special. The by-laws provide that the president "shall call the directors together whenever he deems it necessary. . . . The president or two of the directors may call special meetings of the directors at any time."

The court found that the corporation had "its principal place of business at and in the pavilion of said corporation at Oceano Beach in the County of San Luis Obispo." It cannot be held that the evidence is insufficient to justify this finding. (14a C. J. 86.)

In Thompson on Corporations, second edition, section 496, it is said: "The president may call special meetings of the board of directors at places other than the principal place of business of the corporation, where the by-laws authorize him to call such meetings but prescribe no particular place." But at the time of the assessment in question section 319 of the Civil Code read as follows:

"The meetings of the stockholders and board of directors of a corporation must be held at its office or principal place of business."

In *Seal of Gold Min. Co.* v. *Slater*, 161 Cal. 621, 626 [120 Pac. 15, 17], after quoting section 319, it is said:

"We need not inquire what is meant by the phrase 'principal place of business' in this section. Apparently it is not used in a sense synonymous with that of 'office.' . . . The location and removal of the office of the coroporation was . . . a matter committed to the discretion of the directors. Under section 321a of the Civil Code, the principal place of business of a corporation can be changed only with the consent of the holders of two-thirds of the stock, and upon publication of a notice of the intended change. But, even if the 'office' be treated as equivalent to the 'principal place of business,' these requirements of consent, notice and publication do not, by the express terms of the section, apply to a removal from one location to another in the same city." (See, also, *Moreno Mutual Irr. Co.* v. *Jordan*, 197 Cal. 69 [239 Pac. 716].)

On the authority of the cases cited, it may be said that if the meeting at the pavilion on April 5th was properly held at that place then the second meeting on that day at the newly located office was a lawful one, and the assessment is valid. Prior to that time the office of the corporation and its principal place of business were at the pavilion.

At the special meeting of March 8th, all the directors were present. At the close of that meeting the board took an adjournment to April 5th, at 10 o'clock A. M. "No notice of adjournment of a meeting regularly called need be given." (*Seal of Gold Min. Co.* v. *Slater*, 161 Cal. 627 [120 Pac. 16, 18].) The corporation then having but one office, which was also its principal place of business, it was not necessary for the board of directors, in taking the adjournment, to designate the place at which the adjourned meeting would be held. The plaintiff is presumed to know the law and therefore to have known that it was not within the power of the president to change the place of meeting, and the plaintiff's letter of April 2d shows that he actually had such knowledge. He knew that the directors could lawfully meet at the pavilion, pursuant to adjournment

of March 8th, and transact business there, but notwithstanding this knowledge, he voluntarily absented himself therefrom. He was not justified in assuming that the meeting would not be held at the pavilion merely because of the president's unauthorized notice. The situation is somewhat analogous to the one considered in *Seal of Gold Min. Co.* v. *Slater, supra,* where it is said that the mere circumstance that a director failed to attend a special meeting, in the belief that a quorum would not be present, based upon the statement of another director that he would not attend, but who "did nevertheless, at the request of other directors, attend and participate, . . . is not enough to make it a fraud for a majority of the board, including the director who had stated that he would be absent, to meet pursuant to proper call and notice." That case is authority for the action of the directors, on finding the doors of the pavilion locked, in holding the meeting on the adjacent sidewalk. It follows from what has been said that the meeting at the pavilion was lawful, as was also the subsequent meeting on the same day at the new location, and that consequently the assessment is valid.

█ While the levy of such an assessment can only be accomplished legally by a strict compliance with the statutory provisions relative thereto, or with the provisions of the charter of the corporation upon the subject (*Cheney* v. *Canfield,* 158 Cal. 342, 346 [111 Pac. 92]), there appears to have been such a compliance in the levy involved herein. The plaintiff is in no worse position than the other stockholders who have paid their assessments, because he still has the right to avoid the sale of his stock by paying the assessment.

The judgment is reversed.

Thompson (R. L.), J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 18, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 18, 1930.