[Civ. No. 13988. Second Dist., Div. Two. May 21, 1943.]

ELMER H. WATSON et al., Respondents, v. SANTA CAR-
MELITA MUTUAL WATER CO. (a Corporation) et al.,
Appellants.

Mitchell, Silberberg & Knupp and Guy Knupp for Appellants.

Jerrell Babb for Respondents.

MOORE, P. J.—The question for decision is whether the complaint in a representative suit for an injunction to inhibit the collection of assessments by a mutual water company states a cause of action where the basis of the action is the alleged fraudulent misrepresentations made separately to plaintiffs and 1,500 other investors in the company's stock.

A preliminary injunction having been granted by order of October 4, 1942, upon the complaint, the appellants were restrained from collecting the assessment levied by defendant Water Company on June 10, 1942, against plaintiffs and "holders of shares" in that company, and from forfeiting such shares or "adding a penalty to the amount of the assessment . . . and from suing . . . for the collection of said assessment during the pendency of the action." Appeal was taken from that order and from the order refusing to modify the injunction.

The complaint is a voluminous document. Reduced to the narrowest confines compatible with the instant requirements, it alleges that in 1931 a conspiracy was entered into by the natural defendants to defraud plaintiffs and 1,500 other persons. Pursuant thereto they acquired a desert acreage which they named Santa Carmelita, Unit No. 10. They organized the corporate defendants herein respectively referred to as Water Company, the Palm Springs Company and Kiener. The land lay eighteen miles from Palm Springs. They subdivided it into small lots and named the place La Quinta. By making representations as to the improvements to be made, they sold plaintiffs lot 2, Block 82. The only statements emphasized as having been fraudulent representations inducing the purchases were that upon payment of the full purchase price of a lot plaintiffs as well as the other unnamed buyers would receive a deed and stock in the mutual, non-profit water company whose shares should be appurtenant to the lands of La Quinta; that such stock would pay large annual dividends to

the holder; that payment of no assessments would ever be required, but only the charges for the water used on the lot purchased; that the water company would be maintained "at the total expense of defendants," only. Notwithstanding such promises the complaint declares the incorporation in 1934 of the Water Company whose articles authorized the issuance of "service" and "non-service" shares; that uniform assessments might be levied upon the "service" shares if located on specific parcels. Two "service" shares were issued to plaintiffs. The assessment whose collection was restrained, was levied June 10, 1942, in the sum of $3.50 per share, upon all of the 9,000 "service" shares held by plaintiffs and the 1,500 other unnamed shareholders on whose behalf the action is prosecuted.

After the preliminary injunction had issued defendants took the deposition of Elmer Watson whereby they purposed to demonstrate that the allegations as to misrepresentations made by defendants to purchasers other than plaintiffs were hearsay. Notwithstanding the production of such evidence, the motion for a modification of the temporary writ was denied. Neither rescission nor damages is sought. The action is solely for an injunction to restrain the performance of official duty by officers of the Water Company.

Appellants contend that the injunction should not have been issued for the reasons that: (1) the complaint does not state facts sufficient to authorize an injunction; (2) the action is barred by the statute of limitations and by the laches of plaintiffs; (3) the facts do not warrant a representative suit; (4) the court erred in refusing to modify the injunction in limiting its application to the protection of plaintiffs only.

█ Measuring the complaint by its factual content it appears to be fatally defective. The grievance alleged as the ground for action is that all of the defendants represented that the water stock would pay large dividends and that the owners thereof "would not be required to pay any assessments of any nature whatsoever; . . . that said water stock would be non-assessable for any purpose." These allegations refer to acts to be done in the future. In the absence of declaration that defendants had no intention of performing their promises, they do not constitute actionable fraud. (*Trube* v. *Katz,* 60 Cal.App. 474 [213 P. 264]; *Meehan* v. *Huntington*

*Land & Improvement Co.*, 39 Cal.App.2d 349 [103 P.2d 196].)

It appears from the pleading that the Water Company was organized long prior to the purchase of their lot by plaintiffs. Its articles are shown to have provided for the assessability of its stock. It follows that the alleged promise could not be actionable fraud for the further reason that it was in violation of subdivision 5 of section 290 of the Civil Code which forbids any distinction to exist between classes of shares except as imposed by the articles. The promise by defendants that certain shares should be nonassessable would create a preference in violation of the cited section and could not constitute actionable fraud (*Martin* v. *Palmer Union Oil Co.*, 184 Cal. 386 [193 P. 950]). If the directors of a corporation could contract to give stock preferences which are not authorized, then the sovereignty would be transcended by its own creature and the directors could do that which the Legislature has studiously excluded from the corporate privileges. If the directors of the corporation are forbidden to enter into contract for the purpose of giving preference to the shares sold, the inhibition applies with equal force to a representation made that the shares "would be nonassessable." Plaintiffs are charged with knowledge of the law that any corporation engaged in supplying water for domestic and irrigation uses and not a public utility, may levy assessments upon its shares unless otherwise provided in its articles or by-laws. (Civ. Code, sec. 331, subd. 3.) Since no claim is made that the by-laws prohibit assessments both the statute and the articles unimpaired become a part of the plaintiffs' agreement to purchase the same as though they were copied into the contract. (*Bottle Mining & Milling Co.* v. *Kern*, 9 Cal.App. 527, 531 [99 P. 994].) Therefore, they must have known their stock would be assessable.

While plaintiffs declare themselves to be aggrieved by reason of the alleged promises yet they cling avidly to their investment. Not a murmur is made of their desire to rescind the purchase; neither do they declare for damages. Nor has any of the unnamed 1,500 asked for a return to the status quo. Where investors purchase lands upon false promises by the vendors as to certain privileges to be conferred upon them, lawful measures are available to enforce their right: They either affirm or deny the contract. If they deny

the contract, the course provided by statute is to rescind. (Civ. Code, secs. 1689-1691.) If they do not rescind their only alternative is to affirm the contract and seek damages. Inasmuch as rescission is not suggested by the complaint, necessarily the remedy sought must be legal. If it is an action for damages on account of the alleged fraud there is no occasion for the interposition of equity. Their failure to proceed by either course familiar to complainants in such situations does not entitle them to a new dispensation. Plaintiffs cannot alter the agreement made with defendants to suit their own convenience. They are obliged now either to disavow it or to affirm it. They cannot rescind the part that is disagreeable and retain such benefits as they may deem advantageous. (*Buena Vista etc. Co.* v. *Tuohy,* 107 Cal. 243 [40 P. 386].)

Plaintiffs allege that the certificate issued to them did not provide on its face the rights granted and the restrictions imposed upon the respective classes of shares and the number constituting each class, as required by section 326 of the Civil Code. The conformance with 326 by a mutual water company is irrelevant in determining the liability of the shareholder, who is not a transferee, for an assessment. The purpose of section 326 of the Civil Code is to protect the transferee of such a certificate against ''undisclosed liens, powers, or restrictions which vitally affect his shares,'' unless they are stated on the face of the certificate. (*Wilson* v. *Cherokee Drift Mining Co.,* 14 Cal.2d 56 [92 P.2d 802].)

Although the complaint contains no suggestion that the assessment was not for the benefit of the Water Company or that it was excessive, it attacks the levy on the ground that defendants caused the assessment to be made in aid of their sales of La Quinta lands. Inasmuch as the assessments were levied in accordance with the statute, and for a proper purpose, and with advantage to the company, it is immaterial that the defendants, in causing such levy, might have intended to advance their selfish interests as well. Such motive on the part of defendants is irrelevant in determining the validity of assessment. (*Clark* v. *Oceano Beach Resort Co.,* 106 Cal.App. 574 [289 P. 946] ; *Glenn* v. *California Trona Co.,* 38 Cal.App. 601, 602-604 [177 P. 178].) The test of the validity of the acts of directors in levying assessments is whether the levy was authorized by law and was necessary

for the maintenance of the water company or to pay its debts. There is no allegation that it was unnecessary. The decision as to the need for the assessment is to be made only by the directors (*Clark* v. *Oceano etc. Co., supra*).

■ (2) The action appears to be barred by the provisions of section 338 of the Code of Civil Procedure. The contract was executed January 17, 1935. The complaint was filed on July 15, 1942. While section 338 provides that a cause of action based upon fraud is not deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud, yet the bar of the statute cannot be obviated by the mere declaration that the plaintiff had no knowledge of the fraud until about the time of the filing of his complaint (*Kelly* v. *Longan*, 5 Cal.2d 274 [53 P.2d 971] ; *Bainbridge* v. *Stoner*, 16 Cal.2d 423 [106 P.2d 423] ; *Original Mining & Milling Co.* v. *Casad*, 210 Cal. 71 [290 P. 456]). In order to avoid the bar of the statute the plaintiff must plead the time when the fraud was discovered and of what the discovery consisted that the court may clearly see whether by reasonable diligence the discovery might not have been made before. He must fully state the circumstances under which the discovery was made and must show that the delay in filing the action is consistent with the requisite diligence. (*Phelps* v. *Grady*, 168 Cal. 73 [141 P. 926].)

■ The reasons assigned by plaintiff for his failure to make a discovery of the facts constituting the alleged fraud until within three years prior to the commencement of his action are an element of plaintiff's right of action and must be affirmatively pleaded by him in order to authorize the court to entertain his complaint. He must show that the acts complained of were committed at such times and in such manner as to conceal them from plaintiff. Also, he must allege facts to show the occasions on which the deceitful acts were disclosed to him in order that the court may decide whether his discovery was within the time alleged. ■ If the pleading reveals that plaintiff knew of events that should have put him on inquiry into the truth of the representations made to him, then he will be deemed to have actual knowledge from the date he was put on notice. Whether there has been a discovery on a certain date is a question of law which must be determined from the allegations. "It is not enough that

the plaintiff merely avers that he was ignorant of the facts at the time of their occurrence and has not been informed of them until within the three years.'' (*Original Mining & Milling Co.* v. *Casad, supra,* 74; *Lady Washington Consol. Co.* v. *Wood,* 113 Cal. 482 [45 P. 809].) Notwithstanding such requirements plaintiffs offer no excuse for their delay in bringing this action.

In this connection two significant facts must be emphasized. (a) The contract of purchase provides that the water system shall be owned and operated by defendant Water Company of which Buyer may become a member; that Seller shall bear the initial cost of developing the water system; that Buyer shall pay for water in accordance with rules of the Water Company; that with delivery of his deed to Buyer he shall receive one share of stock in the Water Company for each half lot, the water to be appurtenant to the land. (b) While the complaint makes no mention of the demand for the payment of the first two assessments on plaintiffs' lot, the undenied affidavit of defendant Harry Kiener discloses that during the period of the contract of purchase, and prior to the delivery of the deed and the certificate of the two shares, two assessments had been made by the Water Company. The assessments on plaintiffs' shares were as follows: $5 per share on December 14, 1936; $3.50 per share on June 8, 1938. The deed and the shares in the Water Company were delivered to plaintiffs on the 8th day of May, 1939. At the same time a bill in the sum of $17 from the Palm Springs Company demanding reimbursement for the two assessments which it had theretofore paid was also delivered to plaintiffs who reimbursed Palm Springs Company for such assessments. The waiver effected by such reimbursement plaintiffs now seek to avoid.

According to the affidavit of Elmer Watson because of the threat of the Palm Springs Company ''and in fear of a lawsuit . . . and to avoid the expenses of a lawsuit and to buy their peace they paid said $17 . . . to avoid a law suit and the expenses therewith, although they did not owe it.'' But such arguments and conclusions do not dispel the inferences to be drawn from the demand of May 8, 1939, and from the language of the contract of purchase. The demand for reimbursement of the Palm Springs Company was tantamount to

a demand for payment of the two assessments directly to the Water Company insofar as it gave plaintiffs notice of their obligation to pay assessments which commenced the running of the period prescribed by section 338, Code of Civil Procedure.

The position of the plaintiffs with respect to the reimbursement of the Palm Springs Company for the amount of the two assessments levied prior to the delivery of the deed and water shares to plaintiffs does not differ from that of a stockholder who, after discovering that he had been induced by fraud to purchase corporate stock, voted for the levy of an assessment upon the stock of the corporation and thereafter paid his assessment without objection. Under either situation the action of the stockholder is in effect a ratification of the contract after knowledge of the alleged fraud. (*Marten* v. *Paul O. Burns Wine Co.*, 99 Cal. 355, 357 [33 P. 1107]; *Campbell* v. *Santa Maria Oil & Gas Co.*, 153 Cal. 282, 283 [95 P. 39]; *Rogers* v. *Baird*, 167 N.Y.S. 35, 36; *Macon & A.R. Co.* v. *Vason*, 57 Ga. 314.)

The claim that the payment of the $17 was involuntary because of the threat made by the Palm Springs Company to sue finds no support in the law. Had the Palm Springs Company actually instituted an action to recover the amount of its bill, payment by plaintiffs would not have been involuntary. (48 C.J. 748, § 299; 40 Am.Jur. 833, § 174.) If the actual filing of an action does not render a payment by the defendant involuntary surely a mere threat to sue could amount to no more.

(3) There is no proper basis for filing a representative suit and for that reason an injunction forbidding defendants to enforce the collection of the assessments against the 1,500 unnamed shareholders was unwarranted. There is no allegation of a common ground on which plaintiffs and their unnamed group may stand. There is no fund in which plaintiffs and the unnamed persons have a common interest; no property is mentioned in which the unnamed have an interest in common with plaintiffs; nothing to show that the 1,500 are necessary parties to the action. A representative suit is warranted only in those cases where the represented group is so united in interest with the actual plaintiff in the action as to make them necessary parties under the statute. (§ 382, Code Civ. Proc.) A representative suit is proper only

where the action is for the purpose of conserving a common fund or property in which all of those represented have an interest. It may not be used to reinforce the claim of one who merely seeks relief against promoters who are alleged to have deceived plaintiff and his fellow stockholders in the sales of corporate shares. By no principle of legalistic logic does it appear that the unnamed 1,500 are necessary to the prosecution by plaintiffs of their action. Plaintiffs allege that they were defrauded by deceitful representations made to them by defendants. Such representations do not necessarily affect the rights of their unnamed companions. Plaintiffs may proceed without let or hindrance against the defendants upon whatsoever grievances they deem themselves to have suffered. In the event of their recovery, the judgment would not transfer any advantages to those unnamed. If they lose in the contest, the 1,500 uncomplaining shareholders are still possessed of any claims they may have had against defendants. Plaintiffs' causes of action, if any, against defendants are several and distinct from the rights of the 1,500. There is no privity of estate between plaintiffs and the unnamed group. (*Carey* v. *Brown*, 58 Cal. 180; *Ballin* v. *Los Angeles County Fair*, 43 Cal.App.2d Supp. 884 [111 P.2d 753].)

In view of the foregoing conclusions, a discussion of the fourth proposition is unnecessary.

 Respondents rely upon the proposition that the trial court did not abuse its discretion in granting the injunction or in refusing to dissolve the temporary injunction after it had been granted. But such argument applies only where the pleading is sufficient and the proof offered in support of the complaint merely complies with the rule requiring substantial support. A cause of action must exist before injunctive relief can be granted. (*Williams* v. *Southern Pacific R. R. Co.*, 150 Cal. 624 [89 P. 599]; *Shell Oil Co.* v. *Richter*, 52 Cal.App.2d 164 [125 P.2d 930].) ·

Both orders are reversed.

Wood. (W. J.), J., and McComb, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 19, 1943.